# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY VICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-CV-1775 NAB |
| ) | |
| ANDREW M. SAUL[1], ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Anthony Vick's appeal regarding the denial of disability insurance benefits and supplemental security income under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 8.] The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**Issue for Review**

Vick presents one issue for review. He contends that the administrative law judge ("ALJ") failed to properly craft a residual functional capacity ("RFC") assessment based on substantial evidence in the record. Vick also contends that the ALJ did not properly weigh his testimony in

---

[1] At the time this case was filed, Nancy A. Berryhill was the Acting Commissioner of Social Security. Andrew M. Saul became the Commissioner of Social Security on June 4, 2019. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Andrew M. Saul for Nancy A. Berryhill in this matter.

forming the RFC. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).

The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003). "In this substantial-evidence determination, the entire

administrative record is considered but the evidence is not reweighed." *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012).

## Discussion

### ALJ's Decision

The ALJ found that Vick had the following severe impairments: disorder of the cervical, thoracic, and lumbar spine; major dysfunction of the bilateral hips, knees, and ankles; and chronic obstructive pulmonary disease ("COPD") (Tr. 14.) The ALJ determined that Vick had the RFC to perform medium work and occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. (Tr. 15.) The ALJ also found that he can occasionally balance, stoop, kneel, and crouch, but never crawl. The ALJ determined that Vick can frequently bilaterally handle (gross manipulation) and finger (fine manipulation of objects no smaller than the size of a paper clip). He cannot be exposed to irritants such as fumes, odors, dust, and gases or unprotected heights. He is able to understand, remember, and carry out simple and routine instructions and tasks consistent with SVP levels one and two type jobs. Based on the foregoing RFC, the ALJ determined that Vick was unable to perform any past relevant work and at the time of the ALJ's decision was at advanced age. (Tr. 19.) The ALJ then found that considering Vick's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 19.) The ALJ ultimately concluded that Vick has not been under a disability, as defined by the Social Security Act, from January 16, 2015, through the date of the decision on December 18, 2017.

### RFC Determination

Vick states that remand is required in this action, because the ALJ does not have substantial evidence in the record to support the RFC determination that Vick could perform medium work.

3

Vick asserts that the ALJ rejected the only providers who offered opinions on Vick's ability to work and discounted the physical examinations and diagnostic testing that did not support a finding of medium work.

The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[2] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at 907. It is the claimant's burden to establish his RFC. *Masterson,* 363 F.3d at 737. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

**Medical Evidence in the Record**

Vick received medical treatment from nurse practitioner Patricia Allen between 2013 and 2017. (Tr. 241-300, 321-373.) She treated Vick for hypertension, hyperlipidemia[3], back pain, hip pain, and recurrent psoriasis. Allen's treatment notes indicate substantially normal physical examinations, including musculoskeletal examinations through May 2015. (Tr. 326-29.) During a visit in November 2015, the treatment notes indicate tenderness in the lumbar spine and mildly reduced range of motion (Tr. 328.) A November 2016 physical examination revealed tenderness

---

[2] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

[3] Hyperlipidemia is "a general term for elevated concentrations of any or all of the lipids in the plasma." *Dorland's Illustrated Medical Dictionary* 891 (32nd ed. 2012).

in Vick's right hip.  (Tr. 337.)  All other treatment notes indicated normal musculoskeletal examinations.

Vick received x-rays of the lumbar spine and bilateral hips on May 9, 2016.  (Tr. 355-56.) The x-ray of the lumbar spine indicated moderate chronic compression deformity of the anterior aspect of T12.  (Tr. 355.)  Small osteophytes were present throughout.  No acute findings were detected.  The x-ray of the bilateral hips showed tiny osteophytes with no acute change.  (Tr. 356.) An MRI of the right hip later that same month indicated small bilateral hip joint effusions with no other abnormalities detected.  (Tr. 358.)

On May 5, 2015, nurse practitioner Allen completed an application on Vick's behalf for the Temporary Assistance to Needy Families program.  (Tr. 276.)  On the application, she wrote that Vick had diagnoses of cervicalgia, lumbago, hypertension, hip pain, and psoriasis.  She also wrote that his treatment was medication and rest.  She then placed a checkmark by the following sentence, "Condition is permanently disabling and will be unable to participate in work related activities."  There is no other content on the application.

Dr. Barry Burchett performed a consultative examination of Vick on August 13, 2015.  (Tr. 309-14.)  Dr. Burchett reviewed Allen's treatment notes of May 15, 2015 and performed a physical examination.  (Tr. 309.)  Vick reported that his disability affects his "right hip, knees, ankles, and my back."  (Tr. 309.)  Dr. Burchett noted that Vick ambulated with a normal gait, which was not unsteady, lurching, or unpredictable.  (Tr. 310.)  He did not require the use of a handheld assistive device and he appeared stable, at station and comfortable, in the supine and sitting positions.  (Tr. 310.)  An examination of Vick's hands revealed that his hands could be fully extended and a fist could be made with both hands.  (Tr. 311.)  All fingers could oppose and a coin could be picked up with either hand without difficulty.  (Tr. 311.)  The range of motion of the joints of the fingers

5

of both hands is normal.  (Tr. 311.)  The right #4 distal interphalangeal joint only extends to approximately 140 degrees.  (Tr. 311.)  An examination of the lumbar spine indicated normal curvature, no evidence of paravertebral muscle spasm, and no tenderness to percussion of the dorsolumbar spinous processes.  (Tr. 312.)  A straight leg raise test was negative in both the sitting and supine positions.  (Tr. 312.)  He was able to stand on one leg at a time without difficulty.  (Tr. 312.)  There was no hip joint tenderness, redness, warmth, swelling, or crepitus.  (Tr. 312.)  He was able to walk on the heels and toes and perform tandem gait without difficulty.  (Tr. 312.)  Vick was able to perform a single full squat, but complained of pain in both knees and ankles when doing so.  (Tr. 312.)  Dr. Burchett diagnosed Vick with possible osteoarthritis of the right hip, probable osteoarthritis of the knees, recurrent back pain, without radiculopathy, hypertension, and emphysema/COPD.  (Tr. 312.)  Dr. Burchett also examined Vick's range of motion.  Vick exhibited full passive range of motion in his shoulder, elbow, wrist, hip, knee, ankle/foot, cervical spine, and lumber spine.  (Tr. 313-14.)

     Dr. Yusuf M. Chaudhry completed an internal medical examination for Vick on December 12, 2016.  (Tr. 316-19.)  Dr. Chaudhry's physical examination revealed trigger fingers on the 4th and 5th fingers on the right hand, dry scaly lesions on the palms of Vick's hands, and decreased range of motion with crepitation of Vick's knees.  (Tr. 317.)  On a checklist form attached to Dr. Chaudhry's examination notes, he checked a box that stated the following:  "In my opinion, this individual does have a mental and/or physical disability which prevents him/her from engaging in employment or gainful activity for which his/her age, training, experience, or education will fit him/her."  (Tr. 319.)  Dr. Chaudry also checked a box that in his opinion the expected duration of disability/incapacity will be 13 or more months.  (Tr. 319.)

Vick regularly complained to his nurse practitioner of worsening lower back pain and hip pain. (Tr. 242, 246, 250, 254, 257, 258, 326, 330-31, 339.) He often noted that the pain was aggravated by movement, passive movement, prolonged standing, sitting, and squatting. At times he also reported symptoms were aggravated by ascending and descending stairs, changing positions, daily activities, twisting, and walking. (Tr. 326.) Sometimes he reported there were no relieving factors and at other times he stated symptoms were relieved by rest and sitting.

Vick testified that he is unable to do heavy equipment work, because he gets tired quickly and he cannot walk up inclines. (Tr. 34-35.) He testified that walking anywhere wears him out. (Tr. 35.) He testified that he has pain in his bilateral hips while walking, mostly in his right hip. (Tr. 35.) He also testified that he has pain in his hips and knees when he is standing and his ankles are stiff in the morning. (Tr. 35-36.) Vick is able to walk on a flat surface slowly a "pretty good distance." (Tr. 36.) He testified that he can lift less than 50 pounds and he cannot get the dog food out of his truck. (Tr. 36.) It also hurts his back to lift. (Tr. 36-37.) When asked how he deals with the pain, he stated that he stops and rests "usually a good 10-15 minutes." (Tr. 37.) He has to sit on a hard chair. (Tr. 38.) Vick also testified that his psoriasis and breathing problems also prevent him from going back to work. (Tr. 36-39.)

Vick estimated that he spends five hours out of an eight hour day resting, laying on the couch, or sitting in his bedroom. (Tr. 40.) Vick runs the vacuum sweeper, sometimes he cooks, and he goes grocery shopping. (Tr. 41.) His son helps him lift heavy items. (Tr. 41.) On a scale of 1 to 10, he estimated that his pain from his hips was at 3 constantly, the ankle pain was at 5 to 6 in the mornings and evenings, the psoriasis was sometimes 1 to 2 or 5 to 6. (Tr. 44-45.) He takes aspirin for his pain. (Tr. 45.)

7

**Substantial Evidence in the Record Supports the ALJ's Decision**

Based on a careful review of the record, the Court finds that the ALJ's determination that Vick can perform medium work with additional exertional limitations is supported by substantial evidence in the record as a whole. First, there is medical evidence in the record to support an exertional limit of medium work. The medical evidence in the record consists of substantially normal examination findings by his treatment provider and Dr. Burchett. The record as a whole also supports a RFC finding that Vick should have additional exertional limitations regarding the frequency of climbing ramps and stairs and the prohibition of climbing ladders, ropes, and scaffolds. The RFC also included further limitations regarding crawling and occasionally balancing, stooping, kneeling, and crouching.

Second, the ALJ did not err in giving little weight to nurse practitioner Allen's opinion. (Tr. 17-18.) As an initial matter, Allen's treatment notes do not indicate any substantial limitations. Vick was treated by Allen twice per year between 2013 and 2017. The objective diagnostic testing did not indicate any acute findings. Allen's indication on a checklist form stating that Vick is permanently disabled directly contradicted her treatment notes. Also, the opinion provided no substantive support for her opinion that Vick was permanently disabled. The checklist format, generality, and incompleteness of the assessments limit the assessments' evidentiary value." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (citing *Holstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001)). Also, there was no support for a finding of permanent disability where Vick testified that he only takes aspirin for his joint pain. Furthermore, Allen's finding that Vick was permanently disabled is a determination reserved to the Commissioner of Social Security. (Tr. 22.) *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d). Therefore, Allen's opinion was not entitled to more than little weight.

8

Third, the ALJ did not err in his consideration of Dr. Chaudhry's opinion.  (Tr. 18.) Although Dr. Chaudhry examined Vick and concluded that he was permanently disabled, again, there was nothing in his examination notes to support that conclusion.  Further, he did not provide any information to support his findings on the disability form he completed. He literally checked the box about an incapacity that would last 13 or more months and signed his name.  The ALJ gave partial weight to Dr. Chaudhry's opinion to the extent, he opined that Vick had impairments that affected his ability to work.  The ALJ noted that Dr. Chaudhry's findings were inconsistent with the other evidence in the record as a whole.  As with Allen's opinion, any opinion that Vick was disabled is a determination reserved to the Commissioner of Social Security.  (Tr. 22.)  *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d).

Vick contends that the ALJ's discounting of Dr. Chaudhry and Allen's opinions leaves the ALJ without any support for the RFC determination.  "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  There is no requirement, however, that an RFC finding be supported by a specific medical opinion. *Hensley*, 829 F.3d at 932 (RFC affirmed without medical opinion evidence); *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (same); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same).  "In the absence of medical opinion evidence, medical records prepared by the most relevant treating physicians can provide affirmative medical evidence supporting the ALJ's residual functional capacity findings."  *Hensley*, 829 F.3d at 932 (citing *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2001)).  If the medical record is adequately developed, the ALJ is not required to seek additional information or order a consultative examination.  *Hensley*, 829 F.3d at 932 (citing *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372-73 (8th Cir. 2016)).  The ALJ relied

9

on the available evidence in the medical record, including Vick's treatment notes, the objective medical testing, and Dr. Chaudry and Dr. Burchett's examinations. This medical evidence did not provide support for a more restrictive RFC.

Moreover, the RFC includes all of the information in the administrative record, including information regarding a claimant's activities of daily living. It is well settled law that a claimant need not prove that he is bedridden or completely helpless to be found disabled. *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005). The ALJ must consider, however, "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (citing *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009)). Vick had a very good work history, but his activities of daily living and conservative treatment for his conditions could be considered by the ALJ in forming the RFC. *See e.g. See Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) (If an ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so, deference is given to the ALJ's credibility determination); *Moore v. Astrue,* 572 F.3d 520, 524-25 (8th Cir. 2009) (appropriate for ALJ to consider conservative or minimal treatment in assessing credibility). The ALJ could also consider that Vick stopped working, because he was fired for a policy violation. *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (ALJ can consider that claimant left work for reasons other than disability).

Finally, Vick stated that the ALJ improperly discounted his pain complaints. "As is true in many disability cases, there is no doubt that [claimant] is experiencing pain." *Perkins v. Astrue*, 648 F.3d 892, 901 (8th Cir. 2011). "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or

discomfort does not mandate a finding of disability." *Perkins*, 648 F.3d at 900.  In this case, Vick was taking over the counter medication for his pain and testified that he did not take it on a regular basis.  (Tr. 45.)  Therefore, the ALJ's finding that Vick's pain complaints were not disabling is supported by substantial evidence in the record as a whole.

## Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole.  As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only enough that a reasonable mind would find it adequate to support the decision, and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014).  The Court cannot reverse merely because substantial evidence also exists that would support a contrary outcome, or because the court would have decided the case differently.  *Id.*  Substantial evidence supports the Commissioner's final decision.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**.  [Docs. 1, 18, 24.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Andrew M. Saul for Nancy A. Berryhill in the court record of this case.

　　　　　　　　　　　　　　　　　　　　／s／ Nannette A. Baker
　　　　　　　　　　　　　　　　　　　NANNETTE A. BAKER
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of June, 2020.